F I L E D
Clerk
District Court
JAN 31 2019
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JESSE JAMES BABAUTA CAMACHO,<br><br>Plaintiff,<br><br>vs.<br><br>CNMI DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>Defendants. | Case No.: 18-cv-00008<br><br>**DECISION AND ORDER GRANTING COMMONWEALTH AND OFFICIAL CAPACITY DEFENDANTS' MOTIONS, AND GRANTING IN PART THE PERSONAL CAPACITY DEFENDANTS' MOTION TO DISMISS** |

## I.  INTRODUCTION

Plaintiff Jesse James Babauta Camacho is a prisoner in the Commonwealth of the Northern Mariana Islands ("Commonwealth" or "CNMI"). He is proceeding *pro se* in this civil rights action filed under 42 U.S.C. § 1983 against the CNMI Department of Corrections (DOC) and eleven DOC employees for violating the Eighth Amendment by denying and interfering with his access to medical care. Before this Court are the Commonwealth of the Northern Mariana Islands' Motion to Correct Misjoinder and Motion to Dismiss filed on behalf of DOC and the official capacity defendants (ECF No. 36), and personal capacity Defendants' Motion to Dismiss (ECF No. 37, 42).[1] Plaintiff filed a timely response (ECF No. 44), and Defendants did not file a reply. Pursuant to Local Rule 7.1(a)(2), the Court took these motions under advisement without a hearing. (ECF No. 45.)

---

[1] All CNMI officers named in the complaint which seeks damages under 42 U.S.C. § 1983 are presumed to be sued in their individual capacities. *Shoshone-Bannock Tribes v. Fish and Game Comm'n Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1994).

1

Having reviewed the record and the briefs, and for the reasons set forth below, the Court GRANTS the Commonwealth and official capacity Defendants' motions and DISMISSES the case against them. It also GRANTS the personal capacity Defendants' motion to dismiss, but Plaintiff is GRANTED limited leave to amend his claims against some of the personal capacity Defendants.

## II.    FACTUAL BACKGROUND

The facts alleged in Plaintiff Camacho's original letter to the Court (ECF No. 1) and amended complaint (ECF No. 4, 4-1)[2] are as follows: On the night of August 30, 2017, Camacho was transported to the emergency room with chest pains, difficulty breathing and near loss of consciousness. (ECF No. 1 at 1.) In the emergency room, his vital signs were taken, and he saw a doctor who, without conducting any tests, told him that he was suffering from anxiety. (*Id.*; ECF No. 4-1 at 12.) Camacho was returned to the prison without any medications. (ECF No. 1 at 1.) The next evening, on August 31 at 5:30 p.m., Camacho again experienced chest pain, difficulty breathing, and light-headedness. (*Id.*) He reported these symptoms to a corrections officer (who is not a defendant in this matter) and asked to go to the hospital. (*Id.*) Instead, EMTs were called to the prison to attend to him. (*Id.*) The EMTs checked Camacho's vital signs and found them to be normal, but suggested that the officers bring him to the hospital. (*Id.*) Two other officers told Camacho that he would have to wait until the shift change at 7:00 p.m., and that they were awaiting a phone call from the commanders, Lieutenant Frances Rebuenog and Commander Lorraine Rios (both named Defendants). (*Id.* at 2; ECF No. 4-1 at 2–3.) He was finally told that he would be taken to the hospital the next day. (ECF No.

---

[2] Plaintiff also filed a letter regarding these facts that was docketed as the first five pages of ECF No. 5 in *Camacho v. CNMI Dep't of Corrections*, 18-cv-00009.

2

1 at 2.)

On the morning of the third day, September 1, Camacho continued to ask officers when they would take him to the hospital. (*Id.*) He was told that, per Lieutenant Rebuenog, they would call the EMTs to come again instead of taking him to the hospital. (*Id.*) The EMTs arrived and recommended that Camacho be brought to the hospital, but Commander Rios decided against taking him to hospital, instead just allowing him to use a nebulizer. (*Id.*) By 2:40 p.m., Camacho reported that his pain was worsening to an officer, who was given permission by Lieutenant Rebuenog to take Camacho to the mini-court for some fresh air and was told that they would call the EMTs again. (*Id.*; ECF No. 4-1 at 2.) About two hours later, Camacho telephoned his aunt to ask her to call DOC to ask them to bring him to the hospital, but she was unable to get through. (ECF No. 1 at 2–3.) At 7:00 p.m., during the shift change, Camacho again asked an officer to take him to the hospital because he was suffering from chest pains. (*Id.* at 3.) Two officers told him he looked pale. (*Id.*) He then slid to the floor and blacked out. (*Id.*) Only then was Camacho brought to the hospital, where he was hooked up to an EKG and subsequently told by a doctor that he was having a heart attack. (*Id.*) His doctor told one of the officers that "what [he was] going through could have been prevented if [he had been] taken up to the hospital sooner." (*Id.*)

Camacho remained in the hospital until September 7, 2017. (*Id.*) When he was discharged, his doctor advised him to have a follow-up appointment at the FCC (Family Care Clinic)[3] in one week and to see a heart specialist in Hawaii as soon as possible. (*Id.*) Defendant Nina Aldan, DOC Medical

---

[3] Plaintiff did not explain what FCC stands for. However, in the division of hospital services in the CNMI, the acronym FCC is used to refer to the Family Care Clinic, an outpatient clinic.

Officer, failed to make a follow-up appointment for Camacho at the FCC; it was an ER doctor that made the appointment for him. (ECF No. 4-1 at 3-4.) She also told him that they could not send him off-island because there is no money. (ECF No. 1 at 3.)

On October 17, 2017, Camacho was taken to Guam for a second opinion. (*Id.*) There, a doctor performed a cardiac catheterization and diagnosed him with severe four-vessel coronary artery disease. (*Id.* at 4.) The next day, Camacho complained of chest pains and was taken to the hospital, where he discussed his treatment options with his doctors. (*Id.*) Camacho opted for bypass surgery. (*Id.*) The doctors recommended Camacho be flown to Los Angeles for the surgery as soon as possible, but DOC delayed. (*Id.*) He was transported to Los Angeles about a month later, where he had the surgery the next day. (*Id.*) Camacho returned to Saipan two weeks later. (*Id.*) He claims he is now disabled, but did not provide details regarding his disability. (*Id.*)

### III.  PROCEDURAL HISTORY

On March 13, 2018, this Court received Camacho's letter relaying the above facts. The Court construed his letter as a civil rights complaint under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs as a prisoner in violation of the Eighth Amendment, and made applicable to the states by the Fourteenth Amendment. (Order to Amend Complaint at 1, ECF No. 2.) The Court ordered Camacho to amend his complaint to indicate which officials and entities he intended to name as defendants. (*Id.* at 2.) In response, Camacho filed a complaint using Pro Se Form 14 (Complaint for Violation of Civil Rights (Prisoner)) as well as a handwritten list of eleven Defendants explaining the basis of his claim against each person. (ECF Nos. 4, 4-1.) He named as defendants the following individuals: Commissioner Vincent Attao, Director of Civil Division Georgia Cabrera, Captain Jose

4

Pangelinan, Captain Pius Yaroitemal, the late Lieutenant Frances Rebuenog, Lieutenant Manuel Quitano, Sergeant Frederick Billy, COIII Cynthia Santos, COIII Lorraine Rios, COIII Benjamin Lizama, and COII Nina Aldan. (ECF No. 4-1 at 1.) In his handwritten exhibit, Camacho did not indicate whether he was suing the named persons in their individual or official capacities. However, on the pro se form he indicated that he was suing four[4] defendants in their official capacity only – Cabrera, Rebuenog, Rios, and Lizama.

On August 21, 2018, the Commonwealth filed a motion to correct misjoinder of DOC and dismiss for failure to state a claim. (ECF No. 36.) First, the Commonwealth moved to substitute itself for DOC because DOC lacks the capacity to be sued. Second, it moved to dismiss the claims against the Commonwealth and all official capacity Defendants because they are not "persons" within the meaning of § 1983. The personal capacity Defendants separately filed a 12(b)(6) motion to dismiss for failure to state a claim. (ECF Nos. 37, 42.) Camacho filed a response in which he did not address the arguments put forth by Defendants, but instead he restated his claims against nine[5] of the named defendants and quantified the monetary damages sought. (ECF No. 44.)

/ /

/

---

[4] Pro Se Form 14 provides space to name four defendants and boxes to check to indicate if bringing the complaint against them in their individual capacity, official capacity or both. (ECF No 4 at 2–3.)

[5] Camacho did not restate his claims against two of the originally named Defendants: Frances Rebuenog and Cynthia Santos. Rebuenog passed away in February 2018. (ECF No. 42 at 4 n.2; Proof of Service, ECF No. 29.) The summons issued as to Santos was returned unexecuted as she no longer works at DOC and reportedly moved to the U.S. mainland. (ECF No. 34.)

## IV. ANALYSIS

### a. DOC lacks the capacity to sue or be sued

Defendant Commonwealth asserts that DOC must be dismissed from the case because it is a non-jural entity that lacks the capacity to sue or be sued. (CNMI Memo. at 7, ECF No. 36-1.) "[T]he court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. It is within the discretion of the court to permit the substitution of a party, but the court is not obligated to do so. *Mendoza v. Nordstrom, Inc.*, 865 F.3d 1261, 1266 (9th Cir. 2017). The capacity of a governmental entity to be sued in federal court is determined by the law of the state where the district court is located. Fed. R. Civ. P. 17(b); *see also Shaw v. State of California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir. 1986) ("Under Rule 17(b) of the Federal Rules of Civil Procedure, the [San Jose] Police Department's capacity to be sued in federal court is to be determined by the law of California."). To raise a party's capacity to sue or be sued, "a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." Fed. R. Civ. P. 9(a).

Here, Commonwealth law is silent as to DOC's capacity to sue or be sued. Defendant asks the Court to interpret that silence as an intentional legislative act denying DOC the capacity to sue or be sued, by applying the doctrine of *expressio unius est exclusio alterius*.[6] (CNMI Memo. at 8.) The impact of legislative silence depends on context. The U.S. Supreme Court has "long held that the *expressio unius* canon does not apply 'unless it is fair to suppose that Congress considered the

---

[6] The doctrine of *expressio unius est exclusio alterius* is canon of statutory interpretation that finds the inclusion of one thing implies the exclusion of the alternative. Black's Law Dictionary (10th ed. 2014)

6

unnamed possibility and meant to say no to it.'" *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)).

This Court recently addressed the application of *expressio unius est exclusio alterius* to legislative silence regarding the capacity of CNMI agencies to sue or be sued in two cases. First, in *Norita v. CNMI Department of Public Safety*, the Court stated:

> The Commonwealth Supreme Court recognized the express inclusion of the phrase "to sue or be sued" as a limited legislative waiver of sovereign immunity. *Pangelinan v. NMI Retirement Fund*, 2009 MP 12 ¶ 26 ("When the legislature opened the door for lawsuits against the Retirement Fund, it waived its immunity from damages, but in doing so did not also expressly waive the Fund's immunity from interest on those damages.") A waiver of sovereign immunity is no small act. It is fair to infer that the CNMI legislature considered whether agencies should retain immunity when creating them. Moreover, such a waiver must be unequivocal, either in express language or "by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Ramsey v. Muna*, 849 F.3d 858, 860–61 (9th Cir. 2017) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). The Commonwealth Supreme Court also acknowledged a distinction between "sue and be sued" agencies and those that are not "sue and be sued." *Marine Revitalization Corporation v. Department of Land and Natural Resources (Marine Revitalization II)*, 2011 MP 2 ¶ 17. Neither party has pointed to, nor has this Court found, any instance in the Commonwealth Code in which an agency is expressly denied the capacity to sue or be sued. If there are two distinct groups of agencies, those with capacity and those without, it follows that legislative silence was intended to mean an agency lacks the capacity to sue and be sued.

Decision and Order Substituting CNMI, No. 1:18-cv-00022, at 16 (Jan. 10, 2019, ECF No. 15). Next, in *Manila v. CNMI Department of Corrections*, the Court applied this analysis to DOC and held that it lacks the capacity to sue or be sued. Order Granting CMNI's Motion to Correct Misjoinder, No. 1:18-cv-00003, at 5 (Jan. 24, 2019, ECF No. 33). For the same reasons, Defendants' motion to correct

7

misjoinder is granted. The Department of Corrections is dismissed as a party from this matter, and pursuant to Fed. R. Civ. P. 21, the Commonwealth is substituted in its place.

### b. CNMI and official capacity Defendants are not "persons" within the meaning of § 1983

Defendants argue that Plaintiff has failed to state a claim against the CNMI and official capacity Defendants because he is suing for damages, not prospective relief, and therefore the § 1983 claims against them must be dismissed. (CNMI Memo. at 11.) The Court agrees.

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Additionally, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* However, *pro se* complaints are held to less stringent standards than pleadings filed by lawyers, and "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quotations omitted).

Section 1983 provides a remedy to injured parties deprived of their constitutional rights by a state official's abuse of position. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Specifically, the statute

provides that:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

42 U.S.C. § 1983 (emphasis added). However, it is well established that "neither the CNMI nor its officers acting in their official capacity can be sued under § 1983" because they are not persons within the meaning of the statute. *DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992) (citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)). Section 1983 suits for money damages against CNMI official capacity defendants are not permitted because the judgment would affect the public treasury, making the Commonwealth the real party in interest. *See Paeste v. Gov't of Guam*, 798 F.3d 1228, 1235 (9th Cir. 2015) (citing *Ngiraingas v. Sanchez*, 495 U.S. 182, 184 (1990)). However, "the rule is entirely different with regard to prospective relief," and lawsuits for injunctions or declaratory judgments under § 1983 may proceed against official capacity defendants. *Id.* at 1236; *see also Will*, 491 U.S. at 71 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (quotation omitted).

In his amended complaint, Camacho declined to quantify the relief sought, stating that he left the proper amount to the discretion of the Court. (ECF No. 4-1 at 5.) He later pleaded the amount sought ($100,000 per Defendant) in his response to the motions to dismiss. (ECF No. 44.) Additionally, during the status conference held on September 27, 2018, Camacho confirmed that he is only seeking damages. (ECF No. 43, Minutes.) Therefore, the Commonwealth and all official capacity

Defendants are dismissed from this case because they are not persons for the purposes of a § 1983 lawsuit seeking damages.

### c. Personal Capacity Defendants

In contrast, CNMI officials named as individual (or personal) capacity defendants are persons for the purposes of § 1983. *DeNieva*, 966 F.2d at 483 (citing *Hafer v. Melo*, 502 U.S. 21, 27 (1991)); *see also Aguon v. Commonwealth Ports Authority*, 316 F.3d 899, 904 n.2 (9th Cir. 2003) (Under § 1983, "all officials of the Commonwealth[] may be sued in their official capacities for injunctive relief, and in their individual capacities for damages") (citations omitted). "To state a claim under § 1983 against state officials in their individual capacities, a plaintiff must plead that the officials, 'acting under color of state law, caused the deprivation of a federal right.'" *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012) (quoting *Suever v. Connell*, 579 F.3d 1047, 1060 (9th Cir. 2009)).

The United States Supreme Court has interpreted the Eighth Amendment to mean the government has an obligation to provide medical care to the individuals it is incarcerating. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "Deliberate indifference to the serious medical needs of prisoners" violates the Eighth Amendment. *Id.* at 104. Not every prisoner claim of inadequate medical treatment will reach the level of a constitutional violation. *Id.* at 105–6. First, the plaintiff must have a serious medical need, such that "failure to treat the injury or condition 'could result in further significant injury' or cause 'the unnecessary and wanton infliction of pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Second, the prison official must be deliberately indifferent to that serious medical need, meaning that official "knows of and disregards an excessive risk to inmate health and safety." *Id.* (quoting *Toguchi v. Chung*, 391 F.3d

1051, 1057 (9th Cir. 2004)).

Here Defendants concede, and the Court agrees, that an imminent heart attack and bypass surgery are serious medical needs. (Personal Capacity Defs.' Memo. at 3, ECF No. 42.) Defendants assert that they were not deliberately indifferent to Camacho's medical needs because (1) Camacho failed to allege that any of the named Defendants other than Rios and Rebuenog were aware of his symptoms from August 30 to September 1, 2017, and (2) Rios and Rebuenog did not know of and disregard an excessive risk to Camacho's health. (*Id.* at 4–5.) Deliberate indifference is a high legal standard; it requires more than medical malpractice or gross negligence. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Camacho alleges that Rios, Rebuenog, and Benjamin Lizama denied his requests to be brought to the hospital on August 31 and September 1, 2017, and that Frederick Billy ignored his complaints about the officers that refused to bring him to the hospital. (ECF No 4-1 at 2–3; ECF No. 44 at 1.) Their orders delaying and denying that Camacho be taken to the hospital were, in hindsight, the wrong decision. However, Camacho has not alleged sufficient facts to show that they knew he had a serious medical need and disregarded it. The facts support the opposite conclusion. If neither of the EMTs who saw Camacho on August 31 and September 1 – before he was taken to the hospital on the evening of September 1, 2017 – or the doctor who diagnosed him with anxiety on August 30, recognized that he was suffering from or had an imminent risk of a heart attack, then Defendants could not have been aware of the risk.

After Camacho's heart attack was diagnosed, it is plausible that all Defendants were aware that he had a serious medical need. "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment.'" *Colwell*, 763 F.3d at 1066 (quoting *Hutchinson v.*

11

*United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Camacho alleges that Director of Civil Division Georgia Cabrera interfered with his medical file and off-island medical treatment, and that Medical Officer Nina Aldan refused to make follow-up appointments after he was discharged from the hospital. (ECF No. 1 at 4; ECF No. 4-1 at 1–4; ECF No. 44 at 1–2.) He alleges that Lieutenant Manuel Quitano, Captain Pius Yaroitemal, Captain Jose Pangelinan, and Commissioner Vincent Attao ignored his complaints and grievances that he was denied medical assistance. (ECF No. 4-1 at 1–3; ECF No. 44 at 1–2.)

The Court is troubled that DOC officials would delay or interfere with Camacho's medical treatment after he suffered a heart attack. However, a delay in treatment only constitutes an Eighth Amendment violation if it causes substantial harm. *Wood*, 900 F.2d at 1335 (citation omitted). Here, Camacho was seen by a specialist in Guam, chose his preferred treatment (bypass surgery), was hospitalized while awaiting his surgery, and transported to Los Angeles for the surgery within eleven weeks after his heart attack was diagnosed. The one time he complained of chest pains after he was diagnosed, he was taken to the hospital in Guam and admitted that same day. (ECF No. 1 at 4.) Camacho has not pleaded any facts that show he suffered substantial harm *due to* any delay or interference with his treatment. The harms he alleges resulted from his heart condition and the surgery he opted for, not the actions of Defendants after September 1, 2017. In order to state a claim of deliberate indifference by personal capacity Defendants, he would have to allege that (1) they were aware of his serious medical need; (2) they disregarded an excessive risk to his health by denying, delaying, or interfering with his medical care; and (3) he suffered substantial harm because of that denial, delay, or interference.

Finally, Camacho's amended complaint also includes a claim against the unnamed doctor who erroneously diagnosed him with anxiety when he was taken to the hospital on August 30, 2017. (ECF No. 4-1 at 4.) However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Therefore, Camacho has not stated a plausible § 1983 claim against the unnamed doctor.[7]

## V. CONCLUSION

For reasons set forth above, the Court GRANTS IN FULL the Commonwealth and official capacity Defendants' motions to correct misjoinder of DOC and to dismiss the action against them (ECF No. 36). The Court also GRANTS the personal capacity Defendants' motion to dismiss (ECF No. 37), but Plaintiff is GRANTED LIMITED LEAVE TO AMEND some of those claims. In particular, the Court orders as follows:

1. The Department of Corrections is DISMISSED from the case because it lacks the capacity to sue or be sued, and the Commonwealth is substituted in its stead.

2. Camacho's complaint against the Commonwealth and all official capacity Defendants is DISMISSED because they cannot be sued for damages under § 1983, and he did not request any prospective relief.

3. Camacho's complaint against all personal capacity Defendants is DISMISSED WITH PREJUDICE as to the events that occurred prior to and on September 1, 2017, because he failed to state a plausible claim that they were deliberately indifferent to his serious medical

---

[7] Medical malpractice is its own cause of action that may be actionable in state court.

13

needs *before* the doctor diagnosed his heart attack on September 1, 2017. Because Camacho's allegations against Defendants Lorraine Rios, the late Frances Rebuenog, Benjamin Lizama, and Frederick Billy relate to events occurring before his diagnosis, they are DISMISSED from the case.

4. Defendants' motion to dismiss Camacho's complaint against all remaining personal capacity Defendants as it pertains to the events that occurred *after* the doctor diagnosed Camacho's heart attack is GRANTED WITHOUT PREJUDICE.

5. Plaintiff is GRANTED LEAVE TO AMEND his complaint, limited to adding more facts to support his claims against the remaining personal capacity Defendants for deliberate indifference to his serious medical condition after September 1, 2017. He may file a Second Amended Complaint **no later than March 1, 2019**. A Second Amended Complaint placed in outgoing prison mail by March 1, 2019 will be considered timely filed even if the Clerk receives it after that date**. If Plaintiff fails to file an amended complaint by this deadline, the case will be dismissed with prejudice**.

IT IS SO ORDERED on this 31st day of January, 2019.

RAMONA V. MANGLONA
Chief Judge